UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEVINE MARKS,                          :        CIVIL NO: 4:13-CV-00726
                                       :
                    Plaintiff          :
                                       :        (Judge Brann)
          v.                           :
                                       :        (Magistrate Judge Schwab)
CORIZON HEALTH CARE, INC.,             :
*et al.*,                              :
                                       :
                    Defendants         :
                                       :

## REPORT AND RECOMMENDATION

### I.  Introduction.

The plaintiff, Devine Marks, fell and injured his back during a seizure, and he claims that the defendants were negligent and violated his constitutional rights by assigning him to a cell on the second tier of the prison even though he suffers from epileptic seizures.  The six remaining defendants filed a motion to dismiss the amended complaint.  For the reasons that follow, we recommend that the motion to dismiss be granted in part and denied in part.

### II.  Background and Procedural History.

Marks, a state prisoner proceeding *pro se*, commenced this civil rights action by filing a complaint in the United States District Court for the Western District of Pennsylvania.  He also filed an application for leave to proceed *in forma pauperis*,

and the case was transferred to this court.  Marks named as defendants Corizon

Health Care, Inc. (Corizon) and six individuals.  We reviewed the complaint in

accordance with 28 U.S.C. § 1915A, and we concluded that it failed to state a claim

upon which relief may be granted against Corizon.  We recommended that Marks's

application for leave to proceed *in forma pauperis* be granted, that the claim against

Corizon be dismissed, and that Marks be granted leave to file an amended complaint.

Judge Brann adopted that Report and Recommendation and granted Marks leave to

file an amended complaint.

On June 24, 2013, Marks filed an amended complaint.  He again names

Corizon as a defendant as well as the following six individuals: (1) Ed Shoop, a

health care administrator; (2) L. Harris, a registered nurse supervisor; (3) Janeen

Davis, a nurse supervisor; (4) Sergeant Hunsberger;[1] (5) Teresa Law, a health care

administrator; and (6) Major Leggore.

Marks alleges that on the day that he arrived at the State Correctional

Institution at (SCI-Camp Hill), he told nurses about his epilepsy, and they told him

that it would be noted in his file so that every staff member would know that he has

seizures and that he should have a bottom bunk on a bottom tier.  He also alleges that

---

[1] Although Marks refers to this defendant as "Huntsbeger" and "Huntsburger,"
defense counsel refers to him as "Hunsberger."  We use the spelling provided by
defense counsel because we assume that defense counsel knows how to spell his
client's name.

he was told that it would be put in the computer that he was to receive a bottom bunk/bottom tier (BB/BT)[2] assignment.

On October 22, 2012, Marks went to L-Block and discovered that his "card" was wrong.  So, Marks alleges, he notified Sergeant Hunsberger and told him that he has epilepsy, that he has seizures, and that he can't be housed on a top tier. According to Marks, without calling or checking with anyone, Hunsberger told Marks that he knows what he is doing and that Marks should just go to the cell being assigned to him.  So as to avoid being placed in the hole, Marks complied. Marks alleges that defendant Hunsberger is a sergeant, is medically trained, and should know that a person with epilepsy can be hurt or killed if they have a seizure and fall and hit something.  Nevertheless, Marks alleges that Hunsberger forced him to go to a top-tier cell even though there were at least ten cells on the bottom tier that were open.

Marks alleges that the same day that Hunsberger moved him to the top tier, he wrote to defendants Leggore, Davis, Law, and Harris[3] asking for help, and he explained that he has epilepsy, that he has seizures, that he was placed on a top tier,

_____

[2]  Marks refers to bottom bunk/bottom tier status as BB/BT status.  At one point, in a response to a one of Marks's request slips, one of the defendants refers to LT/LB status, which we assume refers to lower tier/lower bunk status.

[3]  At certain places, the amended complaint is difficult to understand.  We have tried our best to decipher it, and we believe it can reasonably be read to allege that Marks wrote to these defendants on the same day that he was assigned to the top tier.  But, as set forth later, at other places in the amended complaint, Marks alleges specific later dates that he wrote to some of these defendants.

that he told Hunsberger about his situation, that Hunsberger did not care, and that it is hazardous for him to be on the top tier.

Marks alleges that on November 6, 2012, he had a seizure and he fell on the metal stairs on the top tier.[4]  He alleges that he injured his back and that he was rushed to the hospital.  According to Marks, he suffered contusions and abrasions to his lower back, and he was issued a cane and a back brace.  Marks alleges that after his fall, "everybody" wrote him back and stated that he is now on BB/BT status.

Marks attached to his amended complaint a request slip dated October 23, 2012, addressed to defendant Leggore. *Doc. 19* at 6.  He outlined in that request slip his interaction with defendant Hunsberger, and he asked Leggore to help with the situation. *Id.*  In a response dated November 7, 2012, Leggore stated that at the time Marks spoke to Sergeant Hunsberger on October 22nd he was not on BB/BT status. *Id.*  Leggore further states: "Presently and since that date your status has been changed to reflect LT/LB status, therefore, you will be provided an appropriate cell to accommodate your status." *Id.*

Marks also attached to his amended complaint a request slip dated October 24, 2012, addressed to defendant Davis, asking for help.  In that request slip,

---

[4] Marks alleges that he "fell of top tier on metal stairs."  It is not clear if he is alleging that he fell off the top tier or if he is alleging that he fell on the metal stairs on the top tier.

4

Marks stated that he has epilepsy, that he was moved from one cell to another, that he explained to the sergeant that he has seizures and cannot be on the top tier, and that he wrote to the major of the guard about the situation. *Doc. 19* at 8.  The response to the request slip, which was dated November 16, 2012, and which appears to be signed by defendant Harris, provided: "On 10/17/12 PA-C [illegible] wrote for you to have lower bunk and ground level housing.  It's [sic] looks as if you are on LB10 cell-bottom bunk, bottom tier." *Id.*  According to Marks, although that response stated that he was to be on the BB/BT status at the time of the cell assignment by defendant Hunsberger, defendant Leggore's response to Marks's request slip says he was not on BB/BT status at the time.

Marks also attached to his amended complaint, a request slip dated October 26, 2012, and addressed to defendant Law. *Doc. 19* at 9.  In this request slip, he stated that his record states that he has epilepsy and that he should be on BB/BT. *Id.*  He further stated in this request that his "card" said B-13-2, that he told that sergeant that he is BB/BT, that the sergeant took his card "and crossed it out," and that the sergeant wrote B-471 on L Block.  According to the request slip, Marks then told the sergeant that was still wrong, and the sergeant responded that he knows what he is doing that Marks should just go. *Id.*  Marks stated in this request slip that he wrote to Major Leggore and Nurse Supervisor Davis, but he had not

received a response. *Id.*  In a response dated November 16, 2012, defendant Harris

stated that this is a duplicate request and that his request was already answered. *Id.*

Marks further attached to his amended complaint a response to a grievance

that he filed. *Doc. 19* at 7.  That response, which appears to be signed by defendant

Shoop, is dated December 11, 2012, and stated that Marks's grievance was dated

November 27, 2012.  The response provided:

> The following is a review of your medical record:
>
> You disclosed to the intake nurse that you had a history of a seizure disorder.  You were ordered a lower bunk and tier due to your medical condition.  You stated that the intake nurse informed you that you would receive a "substitute" for your seizure medications.  The nurse cannot order medications and you were referred to the PAC.  Reviewing your medication administration record, you were ordered the medications you requested.  You were moved to L Block.  On 10-24-2012 you submitted an inmate to staff request.  The request was answered by RNS Harris and you were informed that you did have a lower bunk and tier order.  I cannot answer for the actions of staff that I do not supervise.
> The review of your medical record indicates that you received proper medical care for your condition.

*Id.*

Marks alleges that as a nurse supervisor, Davis should have acted as if his

situation was serious and either told her supervisor to fix or to look into the

problem immediately.  According to Marks, Davis had knowledge of his problem,

but she "neglected" to help with his serious medical problem.

6

Marks alleges that Harris is a Registered Nurse Supervisor.  He alleges that she did not properly check his medical files, or did not properly investigate and remedy the situation, and did not properly supervise other medical personnel. According to Marks, as a nurse supervisor, she should have had known about all requests sent to any nurse about a complaint, and it should not have taken almost two weeks to look into his complaint.  He asserts that when he complained that he needed help because he is on the top tier and shouldn't be, the situation should have been corrected immediately.

Marks alleges that Law is also a health care administrator, and he wrote to her on October 26, 2012 about his situation.   He alleges that she failed to look into the situation and treat the situation as an emergency.  He alleges he received a response from her only after he fell.  He describes that as "neglect" of his emergency situation.

Marks alleges that Shoop is the Health Care Administrator.  According to Marks, Shoop was to make sure that his staff put his medical condition in his file and on the computer.  Marks alleges that he wrote to Shoop's staff, but Shoop neglected to properly oversee his staff.  According to Marks, Shoop acted with reckless indifference to his Eighth Amendment rights causing him to be seriously injured.

Marks characterizes Hunsberger's actions as both neglect and "deliberate and cruel."  And he alleges that the defendants' actions were knowing and done in deliberate disregard of his serious medical needs.  Marks further characterizes the defendants' alleged lack of effort to correct his cell assignment before his fall in various ways including as "reckless," as "medical malpractice," as "knowing," and as conscious.  He is seeking compensatory and punitive damages.

After screening the amended complaint, we determined that it failed to state a claim upon which relief may be granted against Corizon, and so we recommended that Corizon be dismissed.  Adopting that Report and Recommendation, Judge Brann dismissed Corizon from the case.  The remaining six defendants then filed a motion to dismiss the amended complaint.  That motion has been briefed and is ripe for decision.

## III. Discussion.

### A.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading

of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In

making that determination, we "consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic

documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch.

Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).  "Under Federal Rule of Civil

Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the

claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S.

662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the

defendant fair notice of what the plaintiff's claim is and of the grounds upon which

it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations

are not required, but more is required than labels, conclusions, and a formulaic

recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the

plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211

(3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief

can be granted, the court must accept as true all well-pleaded factual allegations in

the complaint, and all reasonable inferences that can be drawn from the complaint

are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. Eighth Amendment Claims.

#### 1. *Respondeat Superior* and Personal Involvement.

Defendants Leggore, Harris, Davis, and Law contend that Marks has not alleged facts sufficient to show personal involvement on their part.  In that regard, they assert that the only allegation tying them to Marks's fall is that he wrote to them before his fall and asked for a bottom bunk, which they contend is insufficient to show their personal involvement.  Similarly, defendant Shoop contends that it appears that Marks sued him because he denied Marks's grievance concerning his fall.  But according to Shoop, he cannot be liable based solely on the denial of a grievance.  We conclude that Marks has sufficiently alleged

personal involvement on the part of defendants Leggore, Harris, Davis, and Law, but not on the part of defendant Shoop.

Liability under Section 1983 "'cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1998)). Thus, a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

There are two viable theories of supervisory liability. *Santiago v. Warminster Twp.*, 629 F.3d, 121, 129 n.5 (3d Cir. 2010). Under the first theory, a supervisor can be liable if he or she established and maintained a policy, practice, or custom that directly caused the constitutional harm. *Id.* Under the second theory, a supervisor can be liable if he or she participated in violating the plaintiff's rights, directed others to violate the plaintiff's rights, or as the person in charge had knowledge of and acquiesced in his or her subordinates' violations of the plaintiff's rights. *Id.*

An after-the-fact complaint about an incident is insufficient to establish personal involvement on the part of supervisory defendants. *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006).  Nor can liability rest on the mere fact that a supervisory defendant failed to act favorably upon grievance or administrative appeals lodged by the prisoner. *Pressley v. Beard,* 266 F. App'x 216, 218 (3d Cir. 2008).  While the filing of a complaint about a past event is not sufficient to show that the person to whom the complaint was addressed had actual knowledge of the events at the time they happened, in some circumstances, a complaint may be sufficient to put a prison official on notice of alleged continuing abuse by other prison staff and therefore may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims. *See Atkinson v. Taylor,* 316 F.3d 257, 270-271 (3d Cir. 2003)(refusing to hold as a matter of law that correspondence or conversations with prison officials do not constitute sufficient evidence of actual knowledge and acquiescence); *Diaz v. Palakovich,* 448 Fed.App'x. 211, 215 (3d Cir. 2011)(holding that summary judgment for the defendants was improper where the defendants had knowledge through the grievance process of an alleged ongoing practice of improper handling of the plaintiff's mail and the defendants failed to take corrective action).

In this case, Marks alleges that he wrote to defendants Leggore, Harris, Davis, and Law asking for help and explaining that he has epilepsy, that he has

seizures, that he was placed on a top tier, that he told Hunsberger about his situation, that Hunsberger did not care, and that it is hazardous for him to be on the top tier.  He alleges that he wrote to these defendants after he was assigned to an upper tier but before he fell.  At this stage of the proceedings, Marks has sufficiently alleged that he put defendants Leggore, Harris, Davis, and Law on notice of an ongoing dangerous situation and that by failing to take action to correct the situation they acquiesced in the situation.  Thus, at this early stage of the proceedings, Leggore, Harris, Davis, and Law are not entitled to dismissal on the basis of lack of personal involvement.

Marks has failed, however, to sufficiently allege personal involvement on the part of defendant Shoop.  Marks alleges that Shoop is a health care administrator, who, according to Marks, should have made sure that his staff put his medical condition in his file and on the computer.  Marks further alleges that he wrote to Shoop's staff, but Shoop neglected to properly oversee his staff.  Shoop, however, cannot be liable on the basis of *respondeat superior*.  And Marks has not alleged that any facts from which it can reasonably be inferred that Shoop was aware of his situation before his fall.  While he attached to his amended complaint a response to a grievance, which response appears to be signed by defendant Shoop, that response indicates that Marks's grievance was dated November 27, 2012, three weeks after his fall.  Mark's after-the-fact grievance is not sufficient to

14

show personal involvement on the part of defendant Shoop.  Accordingly, we will recommend that the Eighth Amendment claim against Shoop be dismissed.

Defendant Law also contends that her position is administrative in nature, that she was not responsible for the diagnosis or treatment of inmates, and that she reasonably relied upon the judgment of medical professionals at the institution. And defendant Law contends that to the extent that she was not directly responsible for cell assignments on the housing block, she is not liable and should be dismissed.[5]  Marks is not complaining about the diagnosis or treatment of his epilepsy.  Rather, he is complaining about his assignment to a top tier, which he contends was dangerous because of his medical condition.  Marks alleges that Law is a health care administrator at the prison.  Although the precise role of a health care administrator in such a situation is not clear, at this early stage the proceedings it would be premature to say that defendant Law cannot be liable on the basis that her position is administrative in nature.

Defendants Davis and Harris similarly argue that they should be dismissed because as nurses they cannot make diagnosis or prescribe medications, they merely dispense medication prescribed by doctors at the institution, and cell

---

[5]  Defendant Shoop also makes these same arguments.  Because we have already concluded that the amended complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Shoop because Marks's has not alleged personal involvement on his part, we do not address these arguments as to Shoop.

assignments are not their responsibility.  Again Marks is not complaining about the

diagnosis or treatment of his epilepsy.  And as with defendant Law, the precise role

that defendants Davis and Harris have in a situation as alleged by Marks is not

clear.  But again at this early stage the proceedings, it would be premature to say

that defendants Davis and Harris cannot be liable on the basis of their positions.


### 2.  The Merits.

As Marks claims that he should not have been assigned to a top tier because

of his medical condition, his claim appears to be hybrid of a medical claim and a

conditions-of-confinement claim.  Nevertheless, the same standard applies to both

Eighth Amendment medical claims and Eighth Amendment conditions-of-

confinement claims. *See Wilson v. Seiter,* 501 U.S. 294, 303 (1991).  In order for a

plaintiff to allege a viable Eighth Amendment claim, he must allege facts from

which it can reasonably be inferred that the defendants acted with deliberate

indifference to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S.

825, 828 (1994).

Deliberate indifference is a subjective standard. *Id.* at 840 (1994).  "To act

with deliberate indifference to serious medical needs is to recklessly disregard a

substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir.

2009).  To act with deliberate indifference, the prison official must have known of

16

the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

"[D]eliberate indifference describes a state of mind more blameworthy than negligence," and it is clear that mere negligence is not actionable as a constitutional claim. *Id.; see also Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir. 2004); *Singletary v. Pa. Dep't of Corr.,* 266 F.3d 186, 192 n. 2 (3d Cir. 2002)(claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment).  Instead, deliberate indifference represents a much higher standard, one that requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse,* 182 F.3d at 197 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).  At the same time, it is clear that deliberate indifference does not require that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at  842

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference

from circumstantial evidence, . . . and a factfinder may conclude that a prison

official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

at 842 (citations omitted).  And "[w]hile the obviousness of a risk is not conclusive

and a prison official may show that the obvious escaped him, he would not escape

liability if the evidence showed that he merely refused to verify underlying facts

that he strongly suspected to be true, or declined to confirm inferences of risk that

he strongly suspected to exist . . . ." *Id.* at 843 n.8.  Further, "an official's failure to

alleviate a significant risk that he should have perceived but did not, while no

cause for commendation, cannot under our cases be condemned as the infliction of

punishment." *Id.* at 838.  Moreover, "prison officials who actually knew of a

substantial risk to inmate health or safety may be found free from liability if they

responded reasonably to the risk, even if the harm ultimately was not averted." *Id.*

at 844-45.

The defendants contend that Marks has failed to plead sufficient facts to

show that they were deliberately indifferent to his needs.  More specifically,

defendant Hunsberger contends that although Marks alleges that he told him of his

epileptic condition and his need for a lower-tier assignment, Marks does not allege

that he was aware of any medical order requiring a lower tier or lower bunk for

Marks.  But a medical order is not the only way that an officer can become aware

of a substantial risk of serious injury to a prisoner.  Here, Marks alleges that he told

18

Hunsberger that he has epilepsy, that he has seizures, and that he can't be housed on a top tier.  Marks also alleges that defendant Hunsberger is a sergeant, is medically trained, and should know that a person with epilepsy can be hurt or killed if they have a seizure and fall and hit something.  Nevertheless, Marks alleges that Hunsberger forced him to go to a top-tier cell even though there were at least ten cells on the bottom tier that were open.  At this stage of the proceedings, we must take Marks's allegations are true and construe them in his favor.  Doing so, we conclude that the amended complaint states an Eighth Amendment claim against defendant Hunsberger upon which relief can be granted. While it may later be shown the Hunsberger did not appreciate the risk to Marks, in which case he cannot be liable under the Eighth Amendment, such a determination must await a more developed factual record.

The other defendants also contend that Marks fails to assert that they were aware of any specific risk of harm to him caused by an upper-tier assignment.  But Marks alleges that he wrote to them and told them of his situation and the risk it created.  Again, whether they actually appreciated the risk is something that we cannot determine that this stage of the proceedings.  But Marks has sufficiently alleged that he put them on notice of the risk.  Accordingly, the amended complaint states an Eighth Amendment claim upon which relief can be granted against them.

### C.  Medical Malpractice Claims and Negligence Claims.

Defendants Davis and Harris, who are registered nurses and so are licensed professionals under Pennsylvania law, contend that the medical malpractice claim against them should be dismissed because Marks failed to file a certificate of merit as required by Pennsylvania law.  Pennsylvania Rule of Civil Procedure 1042.3(a) provides:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Rule 1042.3 applies to civil actions in which a professional liability claim is asserted against a licensed professional. Pa.R.Civ.P. 1042.1(a).  The certificate-of-merit requirement is a substantive law that applies in federal court to claims

brought under court's diversity jurisdiction. *Liggon-Redding v. Estates of Sugarman,* 659 F.3d 258, 265 (3d Cir. 2011).  It also applies to professional negligence claims under Pennsylvania law brought within the Court's supplemental jurisdiction. *Robles v. Casey*, 1:10-CV-2663, 2013 WL 308699, at *7. (M.D. Pa. Jan. 25, 2013).  Further, the rule applies to both *pro se* and represented plaintiffs. *Michtavi v. Scism*, 1:12-CV-1196, 2013 WL 371643 at *4 (M.D. Pa. Jan. 30, 2013).  When a plaintiff fails to submit a required certificate of merit, it is appropriate for the Court to dismiss the professional malpractice claim without prejudice. *See Davis v. Pennsylvania Dep't of Corr.*, 3:12-CV-02161, 2013 WL 6837797 (M.D. Pa. Dec. 23, 2013).

Here, Marks has not filed a certificate of merit as to any medical malpractice claim against defendants Davis and Harris.  Accordingly, we will recommend that any such medical malpractice claim against Davis and Harris be dismissed without prejudice.

Defendants Hunsberger, Leggore, Law, and Shoop suggest that they are not medical professionals and therefore any medical malpractice claim against them should be dismissed.  We agree that any medical malpractice claim against them should be dismissed.  But, we note, Marks's negligence claims appear to be in the nature of ordinary negligence claims rather than professional medical malpractice claims.  *See Merlini ex rel. Merlini v. Gallitzin Water Auth.,* 980 A.2d 502, 506-07

(Pa. 2009)(discussing difference between ordinary and professional negligence claims).  The defendants have not addressed Marks's negligence claims as ordinary negligence claims and have not presented a basis for the Court to dismiss such claims.  Accordingly, while we recommend that Marks's medical malpractice claims be dismissed, we do not recommend that his ordinary negligence claims be dismissed.

### D.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  In this case, Marks was previously given leave to amend, and he filed an amended complaint.  He has still failed to state an Eighth Amendment claim upon which relief can be granted against defendant Shoop.  Further leave to amend would be futile.

### IV.  Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the motion (doc. 34) to dismiss the amended complaint be granted in part and denied in part. It is recommended that the Eighth Amendment claim against defendant Shoop be dismissed and that the medical malpractice claims against all the defendants be

dismissed.  It is recommended that the motion to dismiss be denied in all other

respects.  Finally, it is recommended that the case be remanded to the undersigned

for further proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within
fourteen (14) days after being served with a copy thereof.  Such party
shall file with the clerk of court, and serve on the magistrate judge and
all parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to
which objection is made and the basis for such objections.  The
briefing requirements set forth in Local Rule 72.2 shall apply.  A
judge shall make a de novo determination of those portions of the
report or specified proposed findings or recommendations to which
objection is made and may accept, reject, or modify, in whole or in
part, the findings or recommendations made by the magistrate judge.
The judge, however, need conduct a new hearing only in his or her
discretion or where required by law, and may consider the record
developed before the magistrate judge, making his or her own
determination on the basis of that record.  The judge may also receive
further evidence, recall witnesses or recommit the matter to the
magistrate judge with instructions.

Submitted this 19th day of June, 2014.

_S/Susan E. Schwab_
Susan E. Schwab
United States Magistrate Judge